CYRUS H. McCORMICK, APPELLANT, CHARLES M. GRAY, AND WILLIAM B. OGDEN.

Where two partners assigned all their partnership property to a trustee with certain instructions how to dispose of it, and afterwards agreed between themselves to

appoint an arbitrator, recognizing in their bonds the directions given to the trustee, the arbitrator had no right to deviate from these directions, and make other disposition of the property.

The reason given by the arbitrator, that he preferred creditors before awarding a certain sum to one of the partners, is insufficient.

Nor had the arbitrator a right to depart, in any particular, from the arrangement of the property which the partners had designated in their deed to the trustee.

THIS was an appeal from the Circuit Court of the United States for the District of Illinois.

McCormick was the inventor of " McCormick's patent Virginia Reaper," and being desirous of manufacturing the same for sale in the States of Illinois and Wisconsin, entered into partnership with Gray. The articles were very specific, but too long to be inserted here. The object was to manufacture five hundred reapers for the harvest of 1848, and the partnership was formed on the 30th of August, 1847. Three lots of ground were purchased in Kenzie's addition to Chicago, and the manufacture was commenced.

Some disagreement afterwards occurred, and both parties united in transferring all the assets of the firm to William B. Ogden, and a settlement was to be made according to the award of Judge H. T. Dickey. The principal parts of the assignment to Ogden, are recited in the opinion of the court, and need not be repeated.

Afterwards, on the 20th of December, 1848, they formally agreed to the reference to Judge Dickey, and exchanged arbitration bonds. By these bonds it was made an express condition of the reference that the award to be made by the arbitrator should " not in any way alter or affect the demands of property and assets in the hands of William B. Ogden, as the trustee of said parties, or the agreements between said parties relative to the collection and disposition of said demands, assets, and property, but the same shall remain under the provisions of said contract." The time for making the award, as originally limited, was afterwards extended to sixty days from the 20th of January, 1849.

The referee, on the 20th of March, 1849, made his award, which was as follows :

" *Award between Cyrus H. McCormick and Charles M. Gray.*

It having been submitted to me, by Cyrus H. McCormick and Charles M. Gray, by articles of agreement and submission dated the twentieth day of December, in the year of our Lord one thousand eight hundred and forty-eight, and a supplement thereto dated 19th (nineteenth) January, one thousand eight hundred and forty-nine, to arbitrate and determine certain differences and disputes between them growing out of the partnership

affairs, business, and dealings of the late firm of McCormick & Gray, submitting all their said partnership differences and all other differences to me as such arbitrator : And the said parties having appeared before me as such arbitrator on the fourteenth day of January last, and for several days thereafter, together with their respective counsel, and witnesses, vouchers and proofs having been then sworn, exhibited, produced, and examined, and the said differences and disputes having been finally submitted to me on the nineteenth day of January last, and it appearing to me that such differences and disputes so existing grew out of the partnership business and dealing of the said late firm of McCormick & Gray, and in the accounts of the said respective parties, and in the claims on their respective parts, one against the other, for alleged breaches of the copartnership articles, and in the final settlement and adjustment of all their copartnership business, dealings, and accounts, and all of the same having been by me fully examined and considered, I do find and award as follows, to wit:

I do find that the assets and liabilities of said late firm on the fourteenth day of January last, were as they are stated to be in an account of assets and liabilities hereto annexed, and marked A, that is to say :

| | | |
|---|---:|---:|
| Real estate constituting assets of said firm, amounting to | | $9,406 06 |
| Machinery amounting to | | 3,637 17 |
| Bills receivable, &c., for reapers, | | 36,853 15 |
| Iron on hand, | $623 14 | |
| 238 sickles, $3,50, | 833 00 | |
| 13 reapers, $120, | 1,560 00 | |
| | | 3,021 14 |
| | | $52,917 52 |

### *Liabilities.*

| | |
|---|---:|
| Debt to Fitch, Barry, & Co., | $1,802 82 |
| Debt to Seymour & Morgan, | 1,750 60 |
| Debt to Seymour & Morgan, | 1,635 29 |
| Debt to O. Orcutt, | 30 00 |
| Debt to M. & M. Stone, | 105 00 |
| Debt to H. Rowell, | 204 08 |
| Debt to George M. Gray, | 73 75 |
| Debt to Charles M. Gray, | 4,051 88 |
| Debt to C. H. McCormick, | 12,050 67 |
| | $21,710 09 |
| Profit and loss. | 31,207 43 |
| | $52,917 52 |

And I do, therefore, award as follows :

1st. I award out of the money and assets of said firm, whether in the hands of either of said copartners or of their agents, there in the first place be paid the following of said debts and liabilities of said firm, *pro ratâ*, until the same shall be fully paid, viz., the above-mentioned debts and liabilities, principal and interest, to the time of payment due to Fitch, Barry & Co., Seymour & Morgan, (both claims,) O. Orcutt, M. & M. Stone, H. Rowell, and George M. Gray, and all other outstanding debts, if there should be any found to be omitted in the above account due or coming due by said firm to third persons.

2d. I award that in the next place there be paid to Cyrus H. McCormick, one of said copartners, out of money and assets, the sum of fourteen thousand six hundred and ten dollars, ($14,610,) for his patent fees, as stipulated by the articles of copartnership, for reapers sold by said firm.

3d. I award that in the third place there be paid out of the assets of the said firm, and in the manner hereinafter stated to each of said copartners, viz., to the said Charles M. Gray, and to the said Cyrus H. McCormick, the amount due by said late firm to each of said copartners as stated above, and in the annexed account, marked A, viz., to the said Charles M. Gray, the sum of four thousand and fifty-one dollars and eighty-eight cents, (4,051.88,) and to the said Cyrus H. McCormick, the sum of twelve thousand and fifty dollars and sixty-seven cents, (12,050.67,) the said two last mentioned sums to be paid to each of said copartners in the manner specified hereinafter fifthly ; and the balance coming to said McCormick over and above his half of his real estate and machinery mentioned hereinafter to be paid to him in money.

4th. I award that out of the balance of the money and assets of said firm, as profits, after paying the items above mentioned, there be paid to the firm of Ogden and Jones, of Chicago, on account of the sale made to them by the said Charles M. Gray, by deed dated the fifteenth day of January, one thousand eight hundred and forty-eight, one fourth part, to Cyrus H. McCormick, one of the said copartners, one fourth part, and to Charles M. Gray, the other of the said copartners, the remaining two fourth parts ; the said parts to be paid to each of the said parties, *pro ratâ*, as the moneys and assets are received and collected.

5th. I do award that the real estate and machinery and their appurtenances, and the tools of the said late firm of McCormick & Gray, amounting together, according to the above statement, to thirteen thousand and forty-three dollars and twenty-three

3 *

cents, (13,043.23,) that is to say, the real estate to nine thousand four hundred and six dollars and six cents, ($9,406.06,) and the machinery, &c., to three thousand six hundred and thirty-seven dollars and seventeen cents, (3,637.17,) be taken, one half part thereof by each of the said copartners, viz., the said McCormick and the said Gray, at the above-mentioned rate, that is to say, six thousand five hundred and twenty-one dollars and sixty-one and a half cents ($6,521.61½,) each, and that such appropriation by each of said copartners of one half of the said real estate and machinery at the sum of six thousand five hundred and twenty-one dollars and sixty-one and a half cents, (6,521.61½,) each, be applied towards the payment of the respective balance due to each of them by the said firm, that is to say, of the balance of twelve thousand and fifty dollars and sixty-seven cents due to the said McCormick, and the balance of four thousand and fifty-one dollars and eighty-eight cents, (4,051.88,) due the said Charles M. Gray, and that the balance of the said Charles M. Gray's half of said real estate and machinery, over and above the payment of the said sum of $4,051.88, be applied in part payment of the two fourth parts of the profits of said firm, coming to him as awarded fourthly above.

6th. I do award that the thirteen reapers belonging to said firm, on hand and unsold, be sold with all convenient despatch, and at the best price that can be had for the same, and that out of the proceeds thereof, there be paid to Cyrus H. McCormick the sum of thirty dollars for each of said reapers so to be sold, as a patent fee; but if the said reapers shall sell for a less amount than one hundred and twenty dollars a piece, then the patent fee aforesaid shall be apportioned to the amount of the sale of each reaper in the same proportion as thirty dollars is to one hundred and twenty dollars, and the said patent fee to be paid as aforesaid upon the sale of the said thirteen reapers shall be deducted from the profits to be divided as above fourthly stated.

7th. I do award that the bills, receivable accounts, and debts due the said firm, not already collected, whether in the hands of either of said copartners or their agent or agents, be collected and caused to be collected in money by the said copartners, and each of them, with all reasonable diligence and despatch; and that the iron and sickles on hand mentioned in said account, and all other assets of the said firm, (excepting the real estate and machinery and tools above stated,) not already sold, be sold and converted into money with all convenient and reasonable diligence, and at the best price that can be procured for the same, and the proceeds of all of the above applied in pursuance of the direction and provisions of this award.

McCormick *v.* Gray et al.

8th. I do award that all moneys, notes, and other property and assets of said late firm, in the hands or possession of or under the control of either of said copartners, shall be forthwith applied by them, and each of them, according to the terms and provisions of this award.

9th. In case any part of the debts mentioned in the first above-mentioned item, or of the patent fees mentioned in the second above-mentioned item, shall have been paid since the hearing of the arbitration aforesaid, the amount of such payment shall be deducted from the amounts directed thereby to be paid.

10th. I do award that all necessary costs and expenses which may be expended or incurred in the sale of any of the copartnership property, and in the collection of the bills receivable and debts due the said firm, shall be paid out of the balance of the partnership moneys and assets fourthly above mentioned, before the whole of such balance shall be finally divided as mentioned in said above-mentioned fourth item.

11th. This award shall be a final settlement of the accounts of the late partnership firm of McCormick & Gray, and of the manner in which the assets of said firm are to be paid, appropriated, and applied, and embracing as well the settlement of the accounts of the respective partners, as an adjustment of their respective claims one against the other, growing out of their said partnership dealings, and of all differences and matters of difference between the said Cyrus H. McCormick and Charles M. Gray, which have been submitted by the arbitration.

All of which is signed by me in duplicate, as my award in the premises, this twentieth day of March, one thousand eight hundred and forty-nine.

HUGH T. DICKEY."

In June, 1849, McCormick filed his bill in the Circuit Court of the United States, for the District of Illinois, against Gray and Ogden for an account, &c., upon the ground that the award was null and void for the following reasons:

" First. The said award is not within the terms or spirit of the said submission ; and the said arbitrator exceeded the power and jurisdiction conferred upon him by the said parties, in this, to wit:

" 1st. That in and by the said assignment from the said McCormick and Gray to said trustee, William B. Ogden, it is expressly declared in the first section thereof, that said Ogden shall proceed to collect said assets as speedily as may be, and after first paying all expenses, costs, and commissions attending the collection and disbursement of the same, shall pay over to said McCormick the sum of $14,610, on account of patent fees due

McCormick *v.* Gray et al.

him for the manufacture of said Virginia Reaper as aforesaid; whereas the said arbitrator, wholly disregarding the said assignment and the said proviso of said arbitration-bond hereinbefore mentioned and set forth, in and by his said award, awarded and directed in the seventh section thereof, (amongst other things,) that the bills receivable, accounts, and debits due the said firm, not (then) already collected, whether in the hands of either of said copartners, or of their agent or agents, be collected or caused to be collected in money by the said copartners, and each of them; and in and by the said first section of said award, the said arbitrator awarded (amongst other things) that out of the money and assets of said firm, whether in the hands of either of the said copartners or of their agents, there in the first place be paid certain debts and liabilities of said firm, mentioned and specified in said section, *pro ratâ;* and the said section of the said award directed and awarded, in substance, that in the next place there be paid to your orator out of the funds of said copartnership the sum of $14,610 for his said patent fees. Thus attempting to subvert and annul the said assignment so made to said Ogden, by directing the said parties to collect the said debts and assets so assigned to him, instead of said Ogden, and in utter disregard of his rights and duties as trustee, and to disburse and distribute the funds of said partnership in a different manner from that provided in and by the trusts of said assignment, and postponing the payment of the said sum of $14,610 so due to your orator for patent fees, until after the payment of said debts mentioned in said first section of said award, contrary to the tenor and effect, true intent, and meaning of the said assignment, and of the said arbitration-bond.

2d. The said assignment provides, in the second section thereof, that said Ogden shall pay all legal liabilities and debts of the said McCormick and Gray as they shall become due; whereas the said award in the first section thereof awards and directs, in substance, that certain debts in said last-mentioned section specified, shall be paid *pro ratâ* until the same shall be paid.

3d. The said assignment in the third section thereof (amongst other things,) provides, in substance, that the balance of said assets, as fast as collected, shall be paid in *pro ratâ* sums as follows: to said McCormick one half of all moneys collected, to Ogden and Jones one fourth, and the remaining fourth to said Gray; provided, however, and it is in said third section agreed and understood, that the respective sums therein provided to be paid to said McCormick and Gray, respectively, shall be retained by said Ogden to await the award of said Dickey, and shall in no case be paid over to either of said parties, until said award shall be made; and when said award shall be made, in case it

should be made against either party, the amount of such award shall be taken out of the moneys going to the party against whom the said award shall be made, and paid over to the party in whose favor the said award shall be made; and when said award shall have been paid, the balance of said moneys going to said McCormick and Gray, if any there shall be, shall be paid over to them, respectively, in the proportion in said assignment provided; whereas, in and by the fourth section of the said award, it is awarded and directed, that of the balance of the money and assets of said firm, as profits, after paying the items therein mentioned, there be paid to said Ogden and Jones one fourth part, to said McCormick one fourth, and to said Gray the remaining two fourths; and no sum certain is awarded to either party within the intent and meaning of the said assignment and submission, but the assets of the said firm are directed to be distributed and divided as last aforesaid.

4th. That the said arbitrator has exceeded his powers in other respects, and the said award is uncertain, unjust, illegal, and tends to the manifest injury, wrong, and oppression of your orator; and your orator humbly insists and submits that the said award ought to be annulled and wholly set aside, and the said Gray ought to be enjoined and restrained from commencing any suit or other proceeding to enforce the collection thereof, or from interfering with said assignment aforesaid, or intermeddling with the property and assets in said assignment mentioned; and that the said Gray ought to come and account with your orator of and concerning the said partnership dealings and transactions from the commencement thereof; and that the said pretended award, so made as aforesaid, is no bar to such account."

The defendants appeared, and demurred to the bill; and the Circuit Court, then holden by the district judge, sustained the demurrer and dismissed the bill.

The complainant appealed to this court.

It was argued by *Mr. Johnson*, for the appellant, and submitted, on a printed argument, by *Mr. Butterfield*, for the appellee.

*Mr. Johnson*, for the appellant, made the following points : —
1. That the averments in the bill gave the court jurisdiction over the parties and the subject.
2. That the award, being beyond and against the terms of the submission, was void. Archer *v.* Williamson, 2 Harris & Gill, 68; Adams *v.* Adams, 8 N. Hamp. 82; Carnochan *v.* Christie, 11 Wheat. 446; Lyle *v.* Rodgers, 5 Wheat. 394.
3. The award being out of the way, the bill presents a familiar case for discovery and relief, being by one partner against

another for an account and settlement of partnership transactions; an averment, of itself, vesting the court with jurisdiction, and entitling the complainant to relief. 1 Story's Eq. sect. 450, 672, 683 ; Scott *v.* Pinkerton, 3 Edw. Ch. Rep. 70.

*Mr. Butterfield*, for the appellee, made the following points : —

1. The first point made by the respondent upon this appeal is, that there is nothing in the case to show that the matter in controversy, or the difference between what the appellant is entitled to under the award and what he would be entitled to if the award should be set aside and a new account should be taken, is sufficient in amount to sustain the jurisdiction of the court.

2. The complainant, by applying to the court below, and obtaining leave to amend his bill after the allowance of the demurrer, waived the right to appeal from the decision of the court, allowing the demurrer ; and no appeal lies to this court from a decision of the court below, refusing to amend. The dismissal of the suit was a necessary consequence of the neglect of the complainant to amend within the sixty days allowed to him by the court, and no appeal lies from that decision. Wright et al. *v.* Lessee of Hollingsworth, 1 Pet. 165 ; Matheson's Administrator *v.* Grant's Administrator, 2 How. 263 ; Read *v.* Hodgens, 2 Mol. Rep. 381.

3. The award of the arbitrator was not an excess of power in any respect, and was not inconsistent with the spirit of the assignment of the debts of the firm to William B. Ogden, as trustee.

4. The courts, in support of the validity of an award, will make every reasonable presumption in favor of its being certain and final, as a determination of all the matters in dispute ; especially when, as in this case, the award states that the arbitrator has examined and considered all the matters in difference between the parties, and that the award is intended to be a final settlement of all such matters as were submitted to the arbitrator. Wood *v.* Griffith, 1 Swanst. Rep. 43 ; Doe *ex dem.* Madkins *v.* Horner, 8 Adol. & Ellis, 235 ; Smith *v.* Demarest, 3 Halst. Rep. 195 ; 9 Adol. & Ellis, 522 ; 3 Greenl. Rep. 421 ; 6 New Hamp. Rep. 264 ; 1 Leigh, 491 ; 9 Wend. 649 ; 2 Johns. Ch. Rep. 551 ; 2 Bay, Rep. 370 ; 2 New Hamp. Rep. 179 ; 1 Dall. 174, 188.

5. An award cannot be set aside, either at law or in equity, except for errors apparent on its face, misconduct in the arbitration, or for some palpable mistake, or on account of the fraud of one of the parties. And nothing *dehors* the award can be pleaded or given in evidence to show that it is unreasonable or unjust. Hunch *v.* Blair, 1 Johns. Ch. Rep. 101 ; Shepherd *v.* Mer-

rill, 2 Id. 276 ; Todd v. Barlow, Id. 551 ; Heard v. Muir, 3 Rand. Rep. 121, 128 ; Shermer v. Beale, 1 Wash. Rep. 11; Plesants v. Ross, 1 Id. 157; Administrator of Schenck v. Cuttrell, 1 Green's Ch. Rep. 297 ; Strodes v. Patton, 1 Brock. Rep. 228.

The bill in this case, which seeks to raise a question as to the decision of the arbitrator, that the complainant should, out of his share of the profits of the partnership, pay the defendant an amount equal to the one half of the defendant's share thereof, transferred to Ogden and Jones, by reason of the neglect of the complainant to supply his portion of the capital of the firm, pursuant to his agreement, cannot be sustained; for the award estops the complainant from alleging any thing contrary to it. Garr v. Gomez, 9 Wend. 649.

6. If a part of the award is invalid, as being contrary to the provisions of the assignment, that does not render the whole award void, but only so much thereof as is inconsistent with the provisions of the assignment, will be rejected, leaving the residue of the award in full force. Taylor's Administrator v. Nicolson, 1 Hen. & Munf. 67 ; McBride v. Hagan, 1 Wend. Rep. 326; Bacon v. Wilber, 1 Cow. 117; Martin v. Williams, 13 Johns. 264 ; Cox v. Jagger, 2 Cow. 649 ; Gordon v. Tucker, 6 Greenl. 247 ; Lyle v. Rodgers, 5 Wheat. 394.

Mr. Justice CURTIS delivered the opinion of the court.

This is a bill for an account of certain partnership transactions betwen McCormick and Gray, and to set aside an award by which that account has been stated. The bill was demurred to, and, by a decree of the Circuit Court of the United States for the District of Illinois, it was dismissed, and the complainant appealed.

The demurrer raises the question, whether the award is valid? The objection to the award is, that it is not pursuant to the submission. To decide this question, it is necessary to examine the terms of the submission and the award. The submission is contained in arbitration-bonds, mutually executed by the parties, bearing date on the 20th day of December, 1848, submitting, generally, all their partnership and other differences with this limitation : " Provided, that the award so to be made by said arbitrator shall not in any way alter or affect the demands of property and assets in the hands of William B. Ogden, as the trustee of said parties, or the agreements between said parties, relative to the collection and disposition of said demands, assets, and property; but the same shall remain under the provisions of said contract."

This clause in the submission refers to an assignment of the principal part of the choses in action of the partnership, in trust

to collect them, made by the partners before the execution of the submission-bonds, which assignment recites the fact of the submission, and contains agreements as to marshalling this part of the partnership assets. Amongst other trusts declared in this assignment are the following : —

" 1st. Said Ogden shall proceed to collect said assets as speedily as may be, and, after first paying all expenses, costs, and commissions attending the collection and disbursement of the same, he shall pay over to said McCormick the sum of $14,610, on account of patent fees due him for the manufacture of said Virginia Reapers, as aforesaid.

" 2d. To pay all legal liabilities and debts of said McCormick and Gray as they shall become due.

" 3d. The balance of said assets, as fast as collected, shall be paid in *pro rata* sums, as follows, — to said McCormick, one half of all moneys collected ; to Ogden and Jones, one fourth part of said moneys, being the amount heretofore sold and assigned by said Gray to them ; and the remaining one fourth part to said Charles M. Gray. Provided, however, and it is hereby expressly understood and agreed between the said McCormick and Gray, that the respective sums herein provided by this clause, to be paid to said McCormick and Gray, respectively, shall be retained by the said Ogden, to await the award of Judge Dickey, in the submission above referred to, and shall in no case be paid over by him to either of said parties until said award shall be made ; and when said award shall be made, in case it shall be made against either party, the amount of such award shall be taken out of the moneys going to the party against whom said award shall be made, and paid over to the amount thereof, to the party in whose favor said award shall be made ; and when said award shall have been paid, the balance of said moneys going to said McCormick and Gray, if any there shall be, shall be paid over to them, respectively, in the proportion hereinbefore provided for. Provided, further, that, if said Gray shall not pay to said Mc-Cormick, within thirty days from the date hereof, the sum of $2,500, on account of the indebtedness of Gray and Warner to said McCormick, then the said Ogden shall retain and pay over to said McCormick, out of the rest of the moneys to be paid to said Gray, as aforesaid, after first paying any award which said judge may make in the submission above mentioned, against said Gray, the aforesaid sum of $2,500, on account of the said indebtedness of said Gray and Warner, aforesaid, together with ten per cent. damage thereon, as a penalty for any delinquency on the part of said Gray, to pay said sum of $2,500 within the time above limited, every thing hereinbefore contained to the contrary notwithstanding ; and the said Gray agrees

to furnish the said McCormick, within the thirty days aforesaid, a full, true, and correct account or statement of the indebtedness of said Gray and Warner to said McCormick; and any excess over and above the said sum of $2,500, which said account or statement shall show to be due to said McCormick, shall also be paid to him by said Gray, within the thirty days above limited, or, in default thereof, the said Ogden shall pay the same out of the same funds, in the same manner and with the like penalty that the said sum of $2,500 is hereinbefore provided to be paid."

These stipulations, by which this part of the partnership assets is disposed of, are, in legal effect, incorporated into the submission, and limit the authority of the arbitrator. He could do nothing to alter or affect them. But, instead of observing this limitation, his award treats the entire property of the partnership, and the respective rights of the partners, as if no such agreements had been made.

He postpones the payment of the fourteen thousand six hundred and ten dollars to McCormick, for his patent fees to the payment of the debts of the firm, though the agreement of the parties was, that it should be first paid out of the choses in action assigned. It is argued, that this was justified by the prior right of creditors. But, as between the partners, they had a perfect right to control the possession of the partnership funds, and determine that the whole, or any part, should go into the possession of either partner. Both are ultimately liable for the debts, and whether one or other member of the firm shall have possession of the funds, either under a claim as a creditor of the firm, or otherwise, while they act in good faith, is a matter wholly subject to their control. Indeed it is only through them, and by means of their equity to have the partnership property applied to the payment of the partnership debts, that creditors have any lien on, or specific rights to, the property of the firm, as distinguished from the property of its members. *Ex parte* Ruffin, 6 Ves. 119; *Ex parte* Fell, 10 Ves. 347; *Ex parte* Williams, 11 Ves. 5.

This partnership was solvent, and the object of the submission was to adjust the relative rights of the partners. The payment of the debts, and a provision for them out of the partnership funds, was probably necessary, in order to make a final settlement, without recourse over, in consequence of payments compulsorily made by one partner, which might disturb the balance between himself and his copartner. But it certainly was not within the authority of the referee to make this provision out of a fund which the partners had otherwise disposed of by an express agreement, which they made part of

the submission, and which constituted a limitation on his authority.

It is said that, by the terms of the agreement between the parties contained in the assignment, these debts were to be paid as they should become due, and that to support the award the court will intend, they were all payable at the time it was made. But if this were intended, the agreement would nevertheless remain, by force of which McCormick's patent fees were to be first paid, out of the proceeds of that particular part of the property assigned.

The partners agreed in the assignment, that, after paying McCormick the sum of $14,610, and discharging the legal liabilities of the firm, the balance of the assets assigned, as fast as collected, should be paid, one half to McCormick, one fourth to Gray, and the remaining fourth to certain assignees of Gray, but that each partner should have a lien on the share of the other, for any balance found due to him by the arbitrator : and that McCormick should have a lien on Gray's share, in the hands of the assignee, for a specific claim of twenty-five hundred dollars, together with any further amount which might prove to be due to him according to an account therein agreed to be rendered.

Upon the face of the award we are unable, by any fair intendment, to reconcile it with these stipulations.  The radical error of the arbitrator seems to have been, that he disregarded these arrangements of the parties, by which they had finally bound so much of their assets as were in the hands of the assignee.  It was his duty to assume that their contract, in respect to this part of the partnership property, was to be specifically executed, and then proceed to consider the equities of the parties in consequence of such an appropriation of those funds, as well as in consequence of the other facts.  But each partner had a right to the specific performance of the trusts declared in the assignment, and the submission gave no power to the arbitrator to make an award inconsistent with their execution.  But this award is so.  In one aspect of this bill, it is a bill for the execution of those trusts, and no reason appears why they should not be executed, except the award.  If the award is valid, the court below rightly decided that the bill must be dismissed, for it not only bars the general account of the partnership transactions, but destroys the particular trusts created by the assignment in favor of each partner, in respect to the proceeds of the choses in action assigned.  Yet it was expressly agreed that the arbitrator should do nothing which could have that effect, and so far as the award is relied on as a defence to the bill against Gray and Ogden, the trustee, to have these trusts

performed, it is in direct conflict with the express words of the submission.

It is suggested that the award may be held valid in part, and so far as it does pursue the submission. There are cases in which, after rejecting part of an award, the residue is sufficiently final, certain, and in conformity with the submission, to stand; but it is indispensable that the part thus allowed to stand should appear to be in no way affected by the departure from the submission. In the present case this does not appear. On the contrary, the basis of this whole award is erroneous, resting on the assumption that the disposal of the entire assets of the partnership was the subject of the award, and it is certain the arbitrator could properly have made no part of this award, as it stands, if he had assumed that the trusts declared in the assignment were to be executed.

It is objected that the amount in controversy is not sufficient to justify an appeal to this court; but this is a suit for an account involving very large sums of money, the complainant claiming sums greatly exceeding two thousand dollars, by force of the assignment and otherwise, and the defendant Gray insisting on the award, as a bar to the whole claim. It is no answer to say that, if this suit should be defeated, the complainant may have some other title, which will not be worth two thousand dollars less than the value of what he now claims. The question is, whether the matter in dispute in this suit is of the value of two thousand dollars. Besides, this matter is a claim for an account far exceeding that amount, and it does not appear that the defendant concedes to the complainant his whole claim, except some sum less than two thousand dollars. There remains, therefore, a dispute concerning this large claim, not narrowed by any concession of the defendant, so as to be reduced below the sum which is required by law for an appeal. It is urged, also, that the appeal is not well taken, because the complainant obtained leave to amend, after the decree dismissing the bill was entered. But it appears from the record that this decree to dismiss the bill was regularly stricken out before the leave to amend was granted, and afterwards, when the complainant elected not to amend, the bill was ordered to be dismissed by reason of the demurrer. From this last-mentioned decree the appeal was taken, and it was regularly and properly allowed.

The decree of the Circuit Court must be reversed, and the case remanded with directions to that court to overrule the demurrer, and order the defendants to answer the bill.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Illinois, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby reversed with costs, and that this cause be, and the same is hereby remanded to the said Circuit Court, with directions to overrule the demurrer, and order the defendants to answer the bill.