**ENTERPRISE WHEEL AND CAR CORPORATION, Appellant,**

v.

**UNITED STEELWORKERS OF AMERICA, Appellee.**

No. 7851.

United States Court of Appeals
Fourth Circuit.

Argued April 16, 1959.

Decided June 16, 1959.

As Modified Aug. 24, 1959.

William C. Beatty, Huntington, W. Va. (E. Jackson Boggs, and Fitzpatrick, Huddleston, Bolen & Hudgins, Huntington, W. Va., on brief), for appellant.

James P. Clowes, Wheeling, W. Va., and David E. Feller, Washington, D. C. (Carney M. Layne, Huntington, W. Va., Arthur J. Goldberg and Jerry D. Anker, Washington, D. C., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and HAYNSWORTH, Circuit Judges.

SOPER, Circuit Judge.

The question in this case is whether the District Court had power under Sec. 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, to require specific performance by an employer of the provisions of the award of an arbitrator to whom a labor dispute had been referred in accordance with the terms of the contract between the employer and a labor union which represented the employees. The award directed the reinstatement of certain discharged employees and reimbursement for loss of wages. The suit was resisted by the employer on the grounds (1) that the court lacked jurisdiction over the subject matter and (2), if the court had jurisdiction, the award was invalid because (a) the arbitrator exceeded his power and (b) the award was uncertain and incomplete. The District Judge overruled these objections and ordered that the employer comply with the decision and award of the arbitrator and this appeal followed.

The suit was brought under Sec. 301 of the statute in the first instance to se-

cure specific performance of an agreement to arbitrate employee grievances contained in a collective bargaining agreement between Enterprise Wheel and Car Corporation, the employer, and United Steelworkers of America, the representative of the employees. The contract covered the period from April 5, 1956 until April 4, 1957, at midnight. It provided certain procedures for the adjustment of grievances and, in case they failed to bring about a settlement, that the grievances should be submitted to a panel of three members, one appointed by the Union, one by the Corporation and a third as an impartial umpire selected by the parties, and that the decision of the umpire should be final and binding upon the parties.

On January 18, 1957, eleven employees were discharged when they walked off their jobs by reason of a dispute over the discharge of another employee by the Corporation. The contract provided that the right to manage the plant and to direct the employees was vested exclusively in the Company, including the right to hire and discharge; but the contract also provided that in the exercise of these rights the management should not peremptorily discharge a member of the union but in all instances in which the management might conclude that an employee's conduct would justify suspension or discharge, he should first be suspended for not more than five days during which he might request a hearing and a statement of his offense and after the hearing the management should conclude whether to convert the suspension into discharge or revoke the same, and that if a discharge was decided upon the employee might present a grievance within five days thereafter.

The Union claimed that the eleven discharged men had a grievance under the terms of the contract but the Corporation rejected this contention, insisting that the men had quit and it refused to reemploy them. The grievance procedures provided by the contract were then invoked but no settlement was reached and,

accordingly, the Union called for arbitration but the Corporation refused to arbitrate. A charge of unfair labor practice was filed by the Union before the National Labor Relations Board, but the Board refused to issue a complaint. Finally, on August 22, 1957, four months after the contract had expired, the Union instituted the present suit. The Company answered, raising jurisdictional and other questions, and the Union filed a motion for summary judgment which, after full hearing, the court granted and ordered the Corporation to submit the grievance to arbitration in accordance with the terms of the collective bargaining agreement.

In obedience to this order, the parties proceeded to arbitration. The arbitrator after hearing reached the conclusion that the penalty of discharge was not justified. He held that the action of the men in quitting their jobs should not be condoned but that the facts warranted only the imposition of a disciplinary penalty of suspension of ten days. He filed his award on April 10, 1958. Therein he directed (1) that the discharge of the men be set aside and reduced to a disciplinary penalty of ten days' suspension, to be calculated from January 18, 1957, and (2) that the Corporation reinstate each of the men who desired reinstatement with classification and seniority status as of the date of the discharge, and (3) that the Corporation reimburse the men for all time actually lost from work, which they would otherwise have had at the regular rate of pay less the ten-day suspension period and less such amounts as each had received from other employment after the expiration of the ten-day period.

█ The first contention of the employer is that the District Court lacked jurisdiction over the subject matter of the suit because it was brought by the Union to enforce the personal rights of individual employees and is, therefore, not tenable under the decision in Association of Westinghouse Salaried Employees v. Westinghouse Corp., 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510. We re-

jected a similar contention in our opinion in Textile Workers Union of America v. Cone Mills Corp., 4 Cir., 268 F.2d 920, and for the reasons therein stated now hold that the District Court had jurisdiction in the pending case.

The second contention of the employer is that the arbitrator exceeded the power vested in him by the collective bargaining contract because he directed that the discharged men be reimbursed for loss of pay which occurred after the expiration of the contract. The award directed the employer not only to reinstate the grievants but also to reimburse them for all time lost from work at the regular rate of pay less the ten-day suspension period and less such amounts as each had received from other employment after the expiration of the ten-day period. The employer's position is that since the contract terminated on April 4, 1957, the grievants' rights thereunder expired on that day and thereafter the Corporation had the right to discharge them at will and without cause so long as the discharge was not for a reason prohibited by the Labor Act. Hence at the time of the rendition of the award they had no right to reinstatement and no right to back pay beyond the expiration date of the contract. On this account the contention is made that the award is void and should be vacated.

■ This result does not follow from the premises although it may be in accord with the earlier rule that when an award goes beyond the terms of the submission agreement the entire proceeding will be vacated. The view now prevailing is that even if the award exceeds the scope of the arbitration agreement it is not invalid *in toto* but only so far as it is excessive, if it is of such character that the court can separate the part within from the part beyond the submission. See Lyle v. Rodgers, 5 Wheat 394, 18 U.S. 394, 409, 5 L.Ed. 117; McCormick v. Gray, 13 How. 26, 54 U.S. 26, 39, 14 L. Ed. 36; York & Cumberland R. Co. v.

Meyers, 18 How. 246, 59 U.S. 246, 252, 15 L.Ed. 380; De Groot v. United States, 5 How. 419, 72 U.S. 419, 430–431, 18 L. Ed. 700; Marceron v. Chevy Chase Services, Inc., 103 U.S.App.D.C. 303, 258 F. 2d 155, 158; Moyer v. Van-Dye-Way Corp., 3 Cir., 126 F.2d 339, 341; 3 Am. Jur., Arbitration & Award, Secs. 123, 134; 6 C.J.S. Arbitration and Award § 89; Sturges, Commercial Arbitration Awards, Sec. 226 (Vernon Law Book Co., 1930). It follows that the award in this case should not be stricken down completely if the valid and invalid parts can be separated by the court.

We are told by the Union that the award is completely valid and that there is no need to restrict it to the contract period. It is assumed that if the men had not been wrongfully discharged, their employment would have continued indefinitely and hence their recoverable loss continues until the present date; and that to hold otherwise would make it possible for an employer to plan a mass number of discriminatory discharges to take effect shortly before the expiration date of the contract without incurring any liability and thereby accomplish the precise thing which the labor contract is designed to prevent. Our attention is called to decisions of the Labor Board in which it held that a recovery for loss of wages caused by discriminatory discharge should cover the period after as well as the period before the expiration date of the contract because the loss would not have occurred if the discharge had not taken place. See Western Union Tel. Co., 83 NLRB 238; Victor Metal Products Corp., 106 NLRB 1361.

■ We do not think that these decisions are controlling here. The power of the National Labor Relations Board to formulate policies and prescribe disciplinary procedures to effectuate the purposes of the statute[1] is not restricted by the terms of the contract between the employer and the union, as must be the

1. See 29 U.S.C.A. § 160(c); May Department Stores Co. v. National Labor Relations Board, 326 U.S. 376, 390–392, 66 S.Ct. 468, 90 L.Ed. 495.

case when either party to a labor agreement sues for specific performance or breach of contract under Sec. 301 of the statute. The general provisions of the Labor Act govern the employer-employee relationship under the guidance of the Labor Board while Sec. 301 of the statute is designed to afford the parties to a labor contract an opportunity to enforce the rights which they derive from that agreement. So it has generally been held that collective bargaining agreements do not create a permanent status or condition, or give an indefinite tenure, or extend rights created and arising under the contract beyond its life, but that these rights remain in force only for the life of the contract unless renewed by subsequent contract or preserved by statute. See System Federation No. 59 of Railway Employees Department of American Federation of Labor v. Louisiana & A. Ry. Co., 5 Cir., 119 F.2d 509, 515, certiorari denied 314 U.S. 656, 62 S.Ct. 108, 86 L.Ed. 526; Elder v. New York Cent. R. Co., 6 Cir., 152 F.2d 361, 364; Beeler v. Chicago R. I. & P. Ry., 10 Cir., 169 F.2d 557, 559, certiorari denied 335 U.S. 903, 69 S.Ct. 407, 93 L.Ed. 437; Edelstein v. Duluth, M. & I. R. Ry. Co., 225 Minn. 508, 520, 31 N.W.2d 465; Walker v. Penn-Reading S. Lines, 142 N.J.Eq. 588, 600–601, 61 A.2d 453.

■ The rights which the employees derived from the 1956–57 labor contract are not open to doubt. While it was in effect they could not be discharged without cause, but after it had expired their hiring was merely for an indefinite period which created an employment that either party might terminate at any time. Meadows v. Radio Industries, 7 Cir., 222 F.2d 347, 349; Atchison T. & S. F. R. Co., v. Andrews, 10 Cir., 211 F.2d 264, 265; Warden v. Hinds, 4 Cir., 163 F. 201; 35 Am.Jur., Master & Servant, Sec. 19 (pp. 457–58); American Law Institute Restatement, Agency, Sec. 442. The same principle is applied where a contract of employment contains a provision allowing termination after a period of notice has been given. In such cases damages for wrongful discharge are limited to the notice period since at the expiration of the period the right of the employer to discharge the employee is unrestricted. See United Protective Workers of America, Local No. 2 v. Ford Motor Co., 7 Cir., 223 F.2d 49, 52, 48 A.L.R.2d 1285; Odell v. Humble Oil & Refining Co., 10 Cir., 201 F.2d 123, 128, certiorari denied 345 U.S. 941, 73 S.Ct. 833, 97 L.Ed. 1367. It follows that in the pending case the discharged men had no right to damages for loss of time under the contract after its expiration and that the award should be amended so as to eliminate damages based on the subsequent period. This can easily be done without invalidating the entire award.

It is no answer to this position to suggest that it would afford an opportunity to the employer to indulge in discriminatory discharges on a large scale. Such a situation might well be handled as was done in National Labor Relations Board v. Waterman S. S. Co., 309 U.S. 206, 218–219, 60 S.Ct. 493, 84 L.Ed. 704, where it was held that the Labor Board may forbid a wholesale discharge of employees, whose tenure is determinable at will, if the discharge is undertaken to effect a purpose forbidden by the Labor Act. Furthermore, the whole matter is subject to regulation by agreement between the parties which may provide for the continuation of the same contract terms in subsequent labor agreements curtailing the common-law right of the employer to discharge employees without cause. In the present case the agreement was for one year, expiring April 4, 1957, and, as we understand the record, there was no renewal thereof for the subsequent year.

■ Finally, the Corporation makes the point that the award of the arbitrator was incomplete and indefinite and therefore incapable of enforcement. As we have seen, the award directed the Corporation to reinstate the grievants and compensate them for the time lost less the ten-day suspension period and less such amounts as they may have received from other employment; but the arbitrator failed to include in the award

the amounts which had actually been earned or, by the exercise of due diligence, could have been earned by the grievants in other employment. It has generally been held that a final award must be certain in its terms or provide means and data by which it may be made certain by mathematical calculation, and that if it is deficient in this respect it must be vacated since the powers of the arbitrator are exhausted and the award cannot be resubmitted to him for correction or amendment. See 3 Am.Jur., Arbitration-Award, Secs. 93, 125; 104 A.L.R. 710, 718, 725.

If this rule were given effect in the pending case the award would be set aside, for it is obviously so incomplete that disputes may well arise as to the amounts of back pay which the employer is obliged to make to the discharged workers. We think, however, that the rule forbidding the resubmission of a final award, which was developed when the courts looked with disfavor upon arbitration proceedings, should not be applied today in the settlement of employer-employee disputes. As pointed out in Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, Congress has clearly indicated that the arbitration of grievance disputes for the preservation of industrial peace is to be encouraged and the Supreme Court has directed the federal courts to fashion a federal substantive law in accordance with this policy. This may readily be done in the pending case by requiring the parties to take steps to complete the arbitration so that the amounts due the grievants for loss of time will be definitely ascertained. Accordingly, the judgment of the District Court is affirmed insofar as it holds that the Court has jurisdiction to direct the specific performance of the award, but the judgment is modified so as to omit the requirement that the Enterprise Wheel and Car Corporation comply with the award of the Arbitrator insofar as the award requires the reinstatement of the discharged employees; and the judgment is further modified so as to

limit the recovery of wages for loss of time to the period of the contract and to require the parties to take appropriate steps to complete the arbitration so that the award will contain a complete adjudication of the matters in dispute, as indicated in this opinion.

Judgment modified and case remanded for further proceedings.